[No. 13452. *En Banc.* December 9, 1916.]

HARRY C. HEERMANS, *Appellant*, v. F. G. BLAKESLEE,
*Respondent.*[1]

CHATTEL MORTGAGES—ASSIGNMENTS TO SECURE DEBT—NECESSITY OF
AFFIDAVIT OF GOOD FAITH AND RECORDING. A chattel mortgage is
created by assignments of the "present and future earnings and
income" of a water works company, "as security for payments and
advances" made or to be made by the assignee, where the assignee's
rights thereunder are referred to as "liens hereby created," making
the same security for a debt which is to continue to exist until paid,
with interest; and hence the same are inferior to the lien of subse-
quent writs of garnishment, and void as to creditors, unless accom-
panied by an affidavit of good faith and recorded as required by
Rem. & Bal. Code, § 3660.

CHATTEL MORTGAGES — PROPERTY SUBJECT — CHOSE IN ACTION —
STATUTES. The earnings and income of a public service water com-
pany are subject to chattel mortgage, under Rem. & Bal. Code, § 3659,
providing that mortgages may be made "upon all kinds of personal
property and upon . . ." rolling stock, all kinds of machinery
and upon boats and vessels, . . . and such like property, and
growing crops, etc.; since the general words are not limited by
the subsequent enumeration of particular things some of which are
not included in the general terms.

[1]Reported in 161 Pac. 489.

NOTE: Rehearing *En Banc* granted and pending.—REP.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered March 13, 1916, dismissing an action for an accounting, upon sustaining a demurrer to the complaint. Affirmed.

*Frank C. Owings* and *Thos. L. O'Leary*, for appellant.

*Chas. D. King*, for respondent.

PARKER, J.—The plaintiff, Harry C. Heermans, seeks an accounting from the defendant, F. G. Blakeslee, for moneys received by him through writs of garnishment issued upon a judgment rendered in his favor against the Washington Public Service Company, and also seeks to have the defendant enjoined from causing to be issued additional writs of garnishment against the debtors of that company. The moneys so acquired and sought to be acquired by the defendant are claimed by the plaintiff as assignee of that company. The defendant demurred to the plaintiff's complaint upon the ground that it does not state facts constituting a cause of action. The demurrer being sustained by the superior court and the plaintiff electing to stand upon his complaint and not plead further, judgment of dismissal was rendered against him, from which he has appealed to this court.

The controlling facts appearing in appellant's complaint may be summarized as follows: The Washington Public Service Company is a water works corporation, engaged in furnishing water to the city of Olympia and its inhabitants. On the 28th day of December, 1914, appellant became a creditor of the Washington Public Service Company on account of money advanced by him to pay certain of its accruing indebtedness. On that day, a writing was signed by the Washington Public Service Company and appellant, which writing is claimed by him to be one of the assignments entitling him to the moneys acquired and sought to be acquired by respondent through writs of garnishment. This writing, following recitals therein of the advancements made

by appellant, reads, so far as we need here notice its provisions, as follows:

"Now Therefore, in consideration of the premises the debtor [Washington Public Service Company] hereby agrees to pay to the creditor [appellant], in the manner hereinafter set forth, all sums heretofore advanced by the creditor, as hereinbefore recited, . . . with interest on all such sums advanced at the rate of eight per cent per year. . . .

"As security for such payments and advances the debtor hereby assigns to the creditor all such present and future earnings and income from sales of water and from service performed as a water company in Olympia, Washington, as shall become due and payable from consumers to it on or after January 1, 1915, . . .

"The creditor hereby constitutes the debtor his agent to collect for him and receipt for in the name of the debtor, all earnings and income hereby assigned, and agrees that if on each day on which any such collections are made—until the debtor's obligation hereunder is fully paid—the debtor shall pay one-half of the income and earnings collected on that day to the creditor at the Capital National Bank in Olympia —and deposits made therein by the debtor to the credit of the creditor shall conclusively be deemed payment to the creditor of all sums so deposited, and the receipt of said bank shall be conclusive evidence of each such deposit—and if the debtor shall perform and observe those agreements on its part hereinafter contained the debtor may retain the remaining one-half of each such days collections for its own use, freed from all liens hereby created and freed from all liability to account to the creditor therefor as his agent.

"And further in consideration of the premises the debtor agrees with the creditor that the remaining half of its collections reserved to the debtor by any of the provisions of this agreement shall be by it promptly applied to the expense of operating and maintaining its water plant in Olympia (with such minor additional service connections and other additions as may be necessary to keep the plant in proper condition for service), including in such expense of operation and maintenance a monthly salary list not exceeding $515, and that no other manner of expenditures shall be made therefrom except with the written consent of the creditor."

On the 30th day of January, 1915, another writing of substantially the same import was signed by the Washington Public Service Company and appellant to secure repayment to him of additional sums then about to be advanced by him for the benefit of that company. Neither of these writings was accompanied by an affidavit of good faith, acknowledged or recorded as required by Rem. & Bal. Code, § 3660, relating to the execution of chattel mortgages.

Thereafter the Washington Public Service Company became indebted to respondent for goods, wares, and merchandise by him sold to it, and thereafter respondent was awarded a judgment by the superior court of Thurston county against the Washington Public Service Company for the goods, wares, and merchandise so sold, in the sum of $1,300.29. In that action respondent caused to be issued sundry writs of garnishment against persons indebted to the Washington Public Service Company, being its customers as water consumers, resulting in some of such persons paying into court the sums owing by them to the company, which were thereafter paid to respondent; and in others, answering acknowledging their indebtedness to the company. Respondent threatens to cause to be issued additional writs of garnishment against customers of the company. Appellant alleges that the writs of garnishment already caused to be issued by respondent "are impairing plaintiff's contracts of assignment heretofore set forth and constitute an irreparable damage to plaintiff and are impairing his security," and that respondent's causing the issuance of additional writs of garnishment will further impair his security. Upon these facts, respondent prays for an accounting and injunction as we have already stated.

In view of the fact that these writings signed by the Washington Public Service Company and appellant, which are claimed by appellant to be assignments effectually transferring the title to "present and future earnings and income" of that company, do not purport to assign the proceeds of

any specified existing contract or contracts of that company, nor any specified amount due or to become due from any present or prospective debtor of the Washington Public Service Company, it may well be doubted that the thing so attempted to be assigned has sufficient potential existence to become the subject of assignment. See 5 C. J. 866, 871, and authorities there cited.

We leave that question undecided, however, since, as we view these writings, they are in no event anything more than attempted executions of chattel mortgages creating liens upon the "earnings and income" of the Washington Public Service Company, which, if properly executed and timely recorded, we assume for present purposes might create such liens, as against the rights of respondent. The particular provisions and recitals of these writings leading us to conclude that they could in no event be more efficacious than chattel mortgages, are the relation therein recited of appellant to the Washington Public Service Company as creditor, which relation manifestly is, by the terms of the writings, contemplated as continuing until the debts attempted to be so secured are paid with interest; the recital therein that the debtor assigns its "earnings and income" to appellant "as security for such payments and advances"; and the reference therein to the rights of appellant as "liens hereby created." Plainly this is an assignment as security for the payment of a debt, which debt is to continue to exist until paid with interest.

We have noticed that neither of these writings is accompanied by an affidavit of good faith, acknowledged or recorded as required by Rem. & Bal. Code, § 3660, which reads:

"A mortgage of personal property is void as against creditors of the mortgagor or subsequent purchaser, and encumbrancers of the property for value and in good faith, unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without any design to hinder, delay or defraud creditors, and it is acknowledged and recorded in the same manner as is required by law in conveyance of real property."

In the meantime, the liens of respondent's writs of garnishment have attached to the moneys and credits of the Washington Public Service Company claimed by appellant, and we see no reason why the right of respondent to acquire additional liens by additional writs of garnishment should not continue as long as these writings remain unaccompanied by affidavits of good faith, unacknowledged and unrecorded, as required by § 3660, above quoted. That a valid lien of a creditor, whether acquired by judicial process or otherwise, is superior to a chattel mortgage executed by his debtor unaccompanied by an affidavit of good faith, unacknowledged and unrecorded, is thoroughly settled by the decisions of this court. *Blumauer v. Clock*, 24 Wash. 596, 64 Pac. 844, 85 Am. St. 966; *Smith v. Allen*, 78 Wash. 135, 138 Pac. 683, Ann. Cas. 1915D 300; *Spokane Merchants' Ass'n v. First Nat. Bank of Colville*, 86 Wash. 367, 150 Pac. 434.

We assume that the rights of appellant and respondent, merely as creditors of the Washington Public Service Company, are equal. The question here is who acquired the first valid lien upon the funds, not merely as against the public service company, but as between appellant and respondent. Respondent having acquired such liens upon moneys due from the debtors of the public service company, by writs of garnishment, and having the right to acquire additional liens upon moneys due from the debtors of that company, by writs of garnishment, so far as the present rights of appellant are concerned, we conclude that the learned trial court did not err in sustaining respondent's demurrer and rendering judgment of dismissal in his favor upon the election of appellant to not plead further.

Counsel for appellant, in support of their contention that the assignments made to him by the public service company of its earnings and income are not chattel mortgages, within the meaning of Rem. & Bal. Code, § 3660, above quoted, cite the recent decision of the supreme court of Kansas in *Hall*

*v. Kansas City Terra Cotta Co.*, 97 Kan. 103, 154 Pac. 210, L. R. A. 1916D 361. That decision, when read without reference to the difference between the Kansas statute and our own, does seem to be at variance with the conclusions we here reach; but we think it is not so when that difference is taken into consideration. The Kansas statute is silent upon the question of what kind of personal property may be mortgaged, while ours in Rem. & Bal. Code, § 3659, reads:

"Mortgages may be made upon all kinds of personal property, and upon the rolling stock of a railroad company and upon all kinds of machinery, and upon boats and vessels, and upon portable mills, and such like property, and upon growing crops and upon crops before the seed thereof shall have been sown or planted. . . ."

It can hardly be seriously contended that the earnings and income of the public service company assigned to appellant as security are not personal property as described by the words "all kinds of personal property" found in § 3659 above quoted. It may be suggested, however, that these words are to be read in the light of the particular enumeration of different kinds of property which follow them; but we think the enumeration of such kinds of property does not limit the meaning of the words "all kinds of personal property," but expand rather than limit the meaning of those words. This is not a case of general words in a statute following the enumeration of particular classes of persons or things, but the opposite of that, and where at least some of the enumerated things would not be included in the general words, "all kinds of personal property" but for the particular enumeration. This at least seems to be true as to the enumeration of "growing crops." We think the rule of *ejusdem generis* does not call for our holding that the words, "all kinds of personal property," as used in this statute, are limited by the particular enumeration of the kinds of property following those words in the statute, to similar property to that particularly enumerated. 36 Cyc. 1119-1122.

Now the Kansas statute touching the recording of chattel mortgages (§ 5224, General Statutes of Kansas, 1909), in force when the assignment involved in *Hall v. Kansas City Terra Cotta Co.* was made, reads:

"Every mortgage or conveyance intended to operate as a mortgage of personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds in the county where the property shall then be situated, . . . ."

thus evidencing a legislative intent to have the recording requirement of the statute refer only to the mortgaging of physical personal property capable of manual delivery, while our statute expressly authorizes the making of mortgages upon "all kinds of personal property" and declares all such mortgages void as against creditors, etc., unless accompanied by the affidavit of good faith, acknowledged, and recorded. Whether or not a chose in action such as is here involved may be mortgaged or pledged is ordinarily a different question from the question of whether or not such mortgaging or pledging falls within the recording statute; though, under our statute, "all kinds of personal property" may be mortgaged and all such mortgages must be accompanied by the affidavit of good faith, acknowledged, and recorded or be held void as to creditors, etc. Those decisions holding that it is only mortgages of physical personal property capable of manual delivery which fall within the recording statute, by reason of the particular provisions of the recording statute involved in the given case, also recognize the law to be that a chose in action, though not capable of manual delivery because of the fact that it is not physical personal property, can become the subject of chattel mortgage or pledge for the security of a debt. Among numerous decisions so holding,

we note the following: *Lawrence v. McKenzie*, 88 Iowa 432, 55 N. W. 505; *Dunn v. Michigan Club*, 115 Mich. 409, 73 N. W. 386; *Livermore Falls Trust & Banking Co. v. Richmond Mfg. Co.*, 108 Me. 206, 79 Atl. 844.

We conclude that the decision of the supreme court of Kansas above noticed is not controlling here, in view of the provisions of our statute.

The judgment is affirmed.

MOUNT, MAIN, HOLCOMB, and ELLIS, JJ., concur.